IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GLORIA JOHNSON-ESTER
as Guardian of Montell Johnson aka
Marcellus Bates,

   Plaintiff,       No. CIV S-10-0876 GGH P

  vs.

SCHWARZENEGGER, et al.,    ORDER &
               FINDINGS AND RECOMMENDATIONS
   Defendants.

_____/

I. Background

   On August 31, 2009, plaintiff filed a complaint seeking injunctive relief in the United States District Court in the Northern District of Illinois.  Plaintiff sought to prevent the transfer of her son, Montell Johnson, from Illinois to California pursuant to a 1998 Executive Agreement between those states, unless a medical treatment plan was provided by the California Department of Corrections and Rehabilitation (CDCR).  Johnson suffers from advanced multiple sclerosis and is a paraplegic.  Johnson is dependant on others for nutrition, hydration, cleaning and movement.  Johnson is currently incarcerated in Illinois but is set to be transferred back to California where he will be incarcerated by CDCR.

   Plaintiff alleges that CDCR has yet to provide a treatment plan outlining how they intend to care for Johnson without violating the Eighth Amendment.  Plaintiff maintains that due

to budget problems in California and the high costs related to properly caring for Johnson, if he is transferred he will endure unconstitutional pain and suffering. The only defendants in this case are officials from CDCR. Defendants indicated that they cannot develop a treatment plan until CDCR medical staff has an opportunity to examine Johnson in person. Plaintiff states that access to the doctors currently treating Johnson should be sufficient.

On September 24, 2009, defendants filed a motion to dismiss (Doc. 18) pursuant to Rule 12(b)(1), 12(b)(3) and 12(b)(6). In the alternative, defendants requested the action be transferred to the Eastern District of California.

On March 25, 2010, the Northern District of Illinois court ruled (Doc. 34) that the case should be transferred to the Eastern District of California and expressed no view regarding the other arguments in the motion to dismiss.

II. Facts

The order from the Northern District of Illinois contains a factual summary which states:

> In 1998, Montell Johnson was convicted of voluntary manslaughter in California and sentenced to life without parole. In December 1998, former-Governor Jim Edgar of Illinois and former-Governor Pete Wilson of California signed an Executive Agreement for the extradition of Johnson to the State of Illinois for prosecution of four counts of murder. The Executive Agreement specifically stated that Johnson would be "made available" to the State of California for placement within the CDCR upon the commutation of his Illinois death sentence. In 1999, Johnson was convicted of murder in Illinois and sentenced to death. This death sentence was commuted to forty years in 2003. While serving his Illinois sentence, Johnson was diagnosed with multiple sclerosis ("MS"). By April 2006, he had been diagnosed as a paraplegic with advanced secondary progressive MS, and former Illinois Governor Rod Blagojevich granted Johnson's petition for medical clemency in 2008. Mr. Johnson currently remains in the custody of Illinois prison officials, but California prison officials seek transfer of Mr. Johnson to their custody under the Executive Agreement.

Doc. 34 at 2.

The Northern District of Illinois also appointed a medical expert to examine Johnson who found the following:

\\\\\

> In summary, Mr. Johnson is in an advanced stage of multiple sclerosis with many severe and fixed neurological deficits. At this stage, sudden change of the neurologic status from this disease is very unlikely to occur. Therefore, from the neurological point of view, and in my opinion, the patient can, with reasonable degree of safety, be transported to outside this State provided the appropriate ambulance transport and support is provided * * * * Additionally, the patient has to be cleared medically for travel by his current primary care physicians, or other internists, just prior to departure to ensure that there are no last minute medical complications, including infections, pulmonary and cardiovascular problems, or from any other body system, that could adversely, albeit temporarily, impact the neurologic status and possibly reduce the margin of safety during travel.

Doc. 34 at 3.

III. <u>Motion to Dismiss</u>

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute ..." <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 931 (1994) (internal citations omitted). Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to seek dismissal of an action where federal subject matter jurisdiction is lacking. "When subject matter jurisdiction is challenged under Federal Rule of Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." <u>Tosco Corp. v. Cmtys. for a Better Env't</u>, 236 F.3d 495, 499 (9th Cir. 2001).

A party may seek dismissal for lack of jurisdiction "either on the face of the pleadings or by presenting extrinsic evidence." <u>Warren v. Fox Family Worldwide, Inc.</u>, 328 F.3d 1136, 1139 (9th Cir. 2003) (citing <u>White v. Lee</u>, 227 F.3d 1214, 1242 (9th Cir. 2000)). In a factual challenge, the court may consider evidence demonstrating or refuting the existence of jurisdiction. <u>Kingman Reef Atoll Invs., L.L.C. v. United States</u>, 541 F.3d 1189, 1195 (9th Cir. 2008). "In such circumstances, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." <u>Id</u>. (quoting <u>Roberts v. Corrothers</u>, 812 F.2d 1173, 1177 (9th Cir. 1987)).

\\\\\

3

IV. <u>Analysis</u>

Defendants argue that this action does not contain a case or controversy as required by Article III of the U.S. Constitution. Defendants contend that plaintiff's complaint is based on speculation, not fact, as Johnson has yet to be placed in the custody of CDCR. Defendants argue that plaintiff merely assumes that the CDCR medical system will be unable to provide for Johnson's needs and this is insufficient. Defendants' argument is well taken.

<u>Legal Standard</u>

The court has no jurisdiction to review claims unless they are ripe. <u>United States v. Streich</u>, 560 F.3d 926, 931 (9th Cir. 2009). The Supreme Court has explained, the

> basic rationale [of the ripeness doctrine] is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.

<u>Abbott Laboratories v. Gardner</u>, 387 U.S. 136, 148-49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). A claim is not ripe "if it involves contingent future events that may not occur as anticipated, or indeed may not occur at all." <u>Streich</u>, 560 F.3d at 931 (quoting <u>Thomas v. Union Carbide Agr. Prods. Co.</u>, 473 U.S. 568, 580-81, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985)).

The requirement that a party have "standing" to bring an action is part of the case-or-controversy provisions of Article III of the Constitution. <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). There are three elements:

> First, the plaintiff must have suffered an injury in fact-an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of-the injury has to be fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] independent action of some third party not before the court. Third it must be likely as opposed to merely speculative that the injury will be redressed by a favorable decision.

<u>Id</u>. at 50-51 (internal quotations & citations omitted).

\\\\\

The two doctrines are related: "ripeness can be characterized as standing on a timeline" and often "coincides squarely with standing's injury in fact prong." Thomas v. Anchorage Equal Rights Commission, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc). To have standing, a party must demonstrate a realistic danger that he will suffer some injury as the result of the operation of the challenged statute or regulation. Id. at 1139.

Discussion

Plaintiff has essentially brought a prospective Eighth Amendment claim. Plaintiff's complaint concludes due to the California budget crisis and the ongoing litigation concerning CDCR medical care,[1] CDCR cannot provide constitutionally adequate health care for Johnson. Plaintiff's complaint and opposition to the motion to dismiss seem to imply, though do not specifically state, that the court should find that CDCR's health care is per se unconstitutional. Otherwise, the court is not sure how it can conclude that the health care will violate the Eighth Amendment, when Johnson has never been under the care of CDCR. Plaintiff clearly urges the court to rule based on future events that may not occur as anticipated, or indeed may not occur at all. This is the exact type of situation that the Ninth Circuit sought to avoid in Streich. Plaintiff's logic would seem to dictate that CDCR would need to provide treatment plans for all individuals with medical needs in advance of their placement in CDCR custody. This would lead to an untenable situation.

While plaintiff's complaint does not specifically request any court order attesting to the constitutionality of CDCR's health care, it does request, "a preliminary and permanent injunction until the Defendants can demonstrate how they intend to provide constitutionally adequate health care." Complaint at 8. This request places the court in an even more precarious position.

\\\\\

---

[1] Plata v. Schwarzenegger, No. 01-1351 (N.D. Cal.); Coleman v. Schwarzenegger, No. 90-0520 (E.D. Cal.).

5

As noted above, the Supreme Court in <u>Abbott Laboratories</u> stated that courts should avoid "entangling themselves in abstract disagreements." <u>Id</u>. at 148-49.  In the instant case, plaintiff seeks a medical plan from defendants describing how they will care for Johnson.  Defendants have responded that until they actually examine and treat Johnson in person, they cannot develop a treatment plan.  Complaint, Exh. 2.  While the undersigned is not a medical doctor, it seems entirely reasonable for CDCR doctors to want to examine the patient in person before making any recommendations.

Should plaintiff's injunction be granted and CDCR were to provide a treatment plan, it is entirely possible that plaintiff would object to the treatment plan and the court will be forced to make determinations regarding medical care before defendants have even examined Johnson in person.  This is the exact situation that the Supreme Court sought to avoid in <u>Abbot Laboratories</u>.

For all these reasons, this action is not ripe for adjudication and the court does not have jurisdiction to review this case.

<u>Remaining Claims</u>

As the court has found that it lacks jurisdiction, the remaining claims in the motion to dismiss need not be addressed.  To the extent this case could be construed or should be brought as a writ of habeas corpus, plaintiff has not named the proper defendants who currently have custody of Johnson.  As Johnson remains in custody in Illinois and the only defendants are with CDCR, the court does not have jurisdiction over any defendants who could grant Johnson's release.

Accordingly IT IS HEREBY ORDERED that the Clerk of the Court assign a District Judge for this case.

IT IS HEREBY RECOMMENDED that defendants motion to dismiss, Doc. 18, be granted and this case be dismissed for lack of jurisdiction.

\\\\\

1  These findings and recommendations are submitted to the United States District
2 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen
3 days after being served with these findings and recommendations, any party may file written
4 objections with the court and serve a copy on all parties.  Such a document should be captioned
5 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
6 shall be served and filed within fourteen days after service of the objections.  The parties are
7 advised that failure to file objections within the specified time may waive the right to appeal the
8 District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
9 DATED:  07/09/2010                              /s/ Gregory G. Hollows
10                                                                   UNITED STATES MAGISTRATE JUDGE
11 GGH: AB
john0876.mtd